UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JNP ENTERPRISES, LLC.** | **CIVIL ACTION** |
| **VERSUS** | **NO:    13-4684** |
| **PATTERSON STRUCTURAL MOVING AND SHORING, LLC., ET AL.** | **SECTION: "N" (4)** |

## ORDER

Before the Court is Defendant Patterson Structural Moving and Shoring, LLC., ("PSMS") and 120 West Partners, LLC., ("West"), collectively ("Defendants") **Motion for Leave to Join Additional Party, to Amend and to Supplement Original Counter-Claim (R. Doc. 44),** seeking this Court grant them leave to file a First Amended and Supplemented Counter-Claim and to join an additional party, pursuant to Fed. R. Civ. P. 13(h), 15(a)(2), 15(d) and 20(a). The motion is opposed. *See* R. Doc. 49. A reply was also filed. *See* R. Doc. 55. It was heard by oral argument on Wednesday, February 26, 2014.

## I.    Background

This case centers on several disputes regarding a commercial transaction in which Plaintiff, JNP Enterprises, LLC("JNP"), allegedly sold 100% of its ownership interest in PSMS, to West on February 8, 2013, for $500,000. *See* R. Doc. 41, p. 1; *see also* R. Doc. 1, p. 4, ¶¶ 21-23. JNP initially filed suit claiming that West breached the sale agreement by, inter alia, refusing to pay JNP certain funds to which JNP was allegedly entitled. *Id.*

In their Answer, filed on June 24, 2013, Defendants counterclaimed against JNP for breach of contract and fraud, alleging that JNP's omissions were in an effort to gain an unfair advantage over defendants, and that West would not have purchased PSMS had it been fully aware of its outstanding

worker's compensation liabilities. *See* R. Doc. 22, p. 13.

On August 23, 2013, JNP filed a motion to dismiss defendants counterclaims, and / or alternatively for more definite statement. *See* R. Doc. 30. On January 3, 2014, this Court denied JNP's motion. *See* R. Doc. 41. On January 16, 2014, JNP answered defendants original counter-claim. *See* R. Doc. 42.

As to the instant motion, on February 5, 2014, defendants seek leave of this Court to amend its original counterclaim, to assert claims which the Court contends were not ripe when previously filed or immature when previously filed. *See* R. Doc. 44, pp. 1-2. Defendants also seek to identify a specific amount of damages. Additionally, the Defendants seek to add Charles Johnson, the individual and sole owner / member of JNP, as a counter defendant in an effort to avoid a potential subsequent lawsuit against him if JNP is insolvent, pursuant to Fed. R. Civ. P. 13(h), 15(a)(2), 15(d) and 20(a). *Id.* [1]

The proposed amended complaint seeks to allege that the company and Charles Johnson knew that PSMS was misreporting or under reporting its employees classification to its workers compensation insurer. PSMS also seeks to allege concealment and fraud regarding a lease agreement which it was required to buy out because it was not disclosed before the sale of the business. Defendants also seek to allege that Johnson knew but failed to disclose UCC encumbrances on its movables, and failed to file tax returns for PSMS.

## II.    **Standard of Review**

---

[1] Defendants / counterclaim plaintiffs, seek to add Johnson as a counterclaim defendant, alleging that "JNP through Johnson, warranted that the items listed [in Exhibit 1 of the Act of Sale] were free and clear of any encumbrances and/or liens." *See* R. Doc. 44-4, p. 1; p. 8, ¶107. Specifically, defendants contend that on June 28, 2013, at the hearing on JNP's motion for preliminary injunction, Johnson admitted that he knew there were UCC filings encumbering PSMS movables, but that he failed to disclose the existence of these filings to 120 West during the negotiation period. Id. at p. 9, ¶¶ 108-110, 134. Defendants contend that these misrepresentations and omissions by Johnson "were used to gain an unfair advantage over 120 West and induce [them into] the act of sale with PSMS." *Id*. Defendants also seek to add that Johnson and JNP were fully aware that the "aforementioned lease was made in the name of PSMS [and that there were UCC filings encumbering PSMS' movables] but omitted this fact to 120 West during the negotiation period." *Id*. at p. 5, ¶ 80.

Federal Rules of Civil Procedure ("Rule") 15(a), which governs the amendment of pleadings, provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). This, and other federal rules, "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

Thus, Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). Furthermore, "this 'policy' is strongest when the motion challenged is the first motion to amend." *Thompson v. New York Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. 1981). Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. *Id*.

Leave to amend is by no means automatic, but is within the sound discretion of the trial court. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). In exercising its discretion, the trial court must determine that there is a "substantial reason" for the delay. *Mayeaux v. Louisiana Health Service and Indemnity Co.*, 376 F.3d 420, 425 (5th Cir. 2004). The Court may consider such factors as (1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; and (4) futility of the amendment. *Gregory v Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).

**III.   Analysis**

    **A.   The Joinder of Johnson**

Defendants seek to add Charles Johnson, the sole member of JNP, as a counter-claim defendant, pursuant to Fed. R. Civ. P. 15(a)(2) and (d), 13(h), and 20(a). Defendants contend that Rule 20 permits the addition of persons to an action as defendants if "(A) any right to relief is asserted against them

jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." *See* R. Doc. 44-1, p. 2; citing Fed. R. Civ. P. 20(a)(2).

Defendants argue that because Charles Johnson is the sole member / owner of JNP, and has been involved in the same activities as JNP that are the subject of defendants' counterclaims, pursuant to La. Rev. Stat. Ann. § 12:1320(D), Johnson may be personally liable due to fraud. *Id.* at p. 2.[2] More specifically, defendants seek to join Johnson as an additional defendant in order to assert personal liability against him for any successful claims of fraud it may have against JNP. *Id.* at p. 3. Defendants argue that because all acts of fraud they allege were perpetrated by Johnson, permitting the addition of him here, as it would "avoid the potential subsequent law suit against [] Johnson" and would promote judicial economy. *Id.* As a result, because the counterclaims arise out of the same transaction or occurrence and questions of law or fact are common to all counterclaim defendants, defendants contend that permissive joinder is appropriate.

In opposition, JNP opposes the addition of Johnson as a defendant, because JNP contends that defendants only seek to add Johnson due to their concern that they may not be able to collect a judgment against them in the event that this Court awards one. *See* R. Doc. 49, p. 6. Furthermore, JNP argues that defendants have failed to state a claim against Johnson for actions constituting individual negligence or fraud, separate and apart from his role as a member of JNP. *Id.* Therefore, JNP argues that defendants have failed to show "why justice so requires" that they should be permitted leave to amend in accordance with Rule 15(a). *See* R. Doc. 49, p. 9.

---

[2] La. Rev. Stat. Ann. § 12:1320(D) provides, "[D] Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him."

JNP also argues that Defendants failed to allege that Johnson owed a duty to them outside of his capacity as a member of JNP. *Id.* at p. 6. Lastly, JNP contends that defendants have failed to distinguish between Johnson and JNP, as JNP argues that defendants "interchangeably and indiscriminately attribute JMP to Johnson and Johnson to JNP." *Id.* Therefore, JNP contends that defendants' claims are futile, and should be disallowed for failing to state an actionable counterclaim against Johnson.

In determining whether or not granting leave to amend is proper, the Court analyzes the *Gregory v. Mitchell* factors. The factors are: (1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; and (4) futility of the amendment. *Id.* Here, JNP only uses two of these factors to support their motion, undue delay and futility of the defendants proposed amended claims. *See e.g.,* R. Doc. 49. The Court shall address each of these factors in turn.

### 1. Undue Delay, Bad Faith, Dilatory Motive of Movant

JNP contends that defendants' motion for leave to amend its counterclaim and add Johnson as an additional defendant in this matter should be denied as it would cause an undue delay in this matter. *See* R. Doc. 49, p. 10. JNP argues that defendants fail to state why they waited over seven months to seek to add Johnson as a counter-claim defendant in this matter, when they alleged in their original counterclaim, that Johnson was the sole member of JNP, and that they knew of his existence and involvement in the negotiation of the act of sale between the parties. *Id.* at p. 11; citing R. Doc. 22-2, p. 9; Part II, ¶ 9. Furthermore, JNP argues that the only explanation offered by Defendants as to the delay in adding Johnson is their concern for the "collect [] ability of a judgment entered against JNP." *Id.* at 11. Therefore, JNP contends that this excuse does not warrant the undue delay in requesting leave to amend and add Johnson as a party.

5

The Fifth Circuit has indicated that "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend. Merely because a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant." *Carson v. Polley*, 698 F.2d 562, 584 (5th Cir. 1982) (finding that delay of four months between time pro se attorneys were assigned to case and time second amended complaint was filed did not warrant denial of motion to amend).

On the other hand, the bare fact that an amendment is filed within the confines of the Court's Scheduling Order does not alone make a claim timely. *See Mayeaux,* 376 F.3d at 427. Instead, the Court must look to the "procedural posture" of the case to determine whether the delay actually prejudices the nonmovant. *See id*. at 426-27 ("The delay must be undue, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court.") (emphasis in original). The Fifth Circuit has held that when leave to amend would cause severe prejudice to defendants, it should be denied. *Mayeaux,* at 427; *Smith v. RMC Corp.,* 393 F.3d at 595-97 (5th Cir. 2004).

At the time of defendants' filing of the instant motion, no deadlines were set by this Court. Therefore, for purposes of this Court's scheduling order, the defendants' motion is timely filed. As such, there is not likely any undue delay or bad faith on the filing of defendants' amended counterclaim. Therefore, the Court finds that this factor weighs in favor of permitting leave to amend.

   **2.    Futility of the Amendment**

JNP argues that leave should be denied because the claims against Johnson are futile, as the proposed amendment, as it relates to Johnson, does not pass *Iqbal* or *Twombly* scrutiny. *See* R. Doc. 49, p. 12. More specifically, JNP contends that Defendants' have failed to state a plausible claim for which relief may be granted. *Id. citing Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)).

6

In support of its argument, JNP cites to several cases from this district which support its argument that a manager or member of a limited liability company is not liable for a "debt, obligation, or liability of the limited liability company" absent that individual being individually liable for negligent or wrongful acts "when those acts are done outside his capacity as a member, manager, employee or agent of the limited liability company." *See* R. Doc. 49, p. 9; citing LA. REV. STAT. § 12:1320(B) and (D); *Roth v. Voodoo BBQ, LLC*, 964 So.2d 1095 (La. App. 4th Cir. 2007) (citing *Curole v. Ochsner Clinic, L.L.C.*, 811 So.2d 92, 97 (La. App. 4th Cir. 2002)).

JNP relies on *Utila Dive Ventures v. Bay Island Yacht Restoration, LLC*, No. 10-2621, 2011 WL 4101496 (E.D. La. Sept. 14, 2011) and *HWB, Inc. v. Metalpro Indus., L.L.C.*, No. 05-6665, 2006 WL 1581329 (E.D. La. June 7, 2006), for the proposition that on a motion for summary judgment, and on a motion to dismiss, respectfully, this Court held that a member of a limited liability company did not owe a duty outside of his capacity as a member of the limited liability company, therefore there was no basis for the court to hold the member personally liable for obligations of the company. *See* R. Doc. 49, p. 10; (*see also HWB, Inc.,* 2006 WL 1581329, where this Court on a motion to dismiss, held that plaintiff's complaint did not directly allege facts that a member-defendant, of a limited liability company acted outside of his capacity as a manager or a member so as to warrant him being personally liable).

In response to JNP's opposition, the defendants argue that their claims against Johnson are not futile because, in the event that they are successful in establishing that JNP committed fraudulent acts against them, because then by way of law, Johnson would also be liable for those acts. *See* R. Doc. 52-2, p. 6. Defendants also argue that JNP's argument that Johnson would have had to act outside his capacity as a member of the limited liability company is misplaced. Furthermore, they argue that the Louisiana Supreme Court ("LASC") in *Ogea v. Merritt,* 2013-1085 (La. 12/10/13) interpreted the meaning of the statutorily described exceptions to limited liability set forth in La. Rev. Stat. Ann. § 12:1320(D), as it

relates to fraud, breach of professional duty and/or other negligent or wrongful act.

Defendants contend that in *Ogea,* the LASC found that as the above enumerated exception applies to the fraud exception, the claimant did not have to allege actions against the member of the LLC were separate and apart from his role as a member of the LLC. *Id.* at p. 7; citing *Ogea,* 2013 WL 6439355, at *11-12. However, defendants contend that JNP's argument that the acts must be "separate and apart" from a member's duty / role in an LLC, does apply to the "negligence and wrongful act" exception of §12:1320(D), as referenced in *Ogea. Id.* at 14-16.

Defendants also argue that their proposed amended counterclaim does not expand the scope of the original counterclaim, as it merely states several claims of fraudulent acts against Johnson, for which this Court has already determined that the original counterclaim contained "detailed factual allegations regarding JNP's misrepresentation or suppression of the truth [,] [. . .] sufficient allegations [of] fraudulent intent and alleges that the misrepresentation induced 120 West to sign the contract." *See* R. Doc. 52-2, p. 7. Therefore, defendants contend that their purported amended counterclaim is not barred by this exception, but rather permitted as a viable cause of action.

In *Utila Dive Ventures v. Bay Island Yacht Restoration, LLC*, No. 10-2621, 2011 WL 4101496 (E.D. La. Sept. 14, 2011), on the plaintiffs' unopposed motion for summary judgment, the Court found that the plaintiffs had no basis for holding the owner of the LLC personally liable under § 12:1320(D) in a breach of contract action, as the contract was between the two entities and did not involve the owner personally. 2011 WL 4101496, at *1-2. The Court discussed the exceptions to §12:1320, which would allow for bringing an action against a member or owner of an LLC in his personal capacity, and held that for a member to be liable on the basis of **"[a] negligent or wrongful act"** the act must be committed "outside one's capacity as a member, manager, employee or agent of a limited liability company or which while done in one's capacity as a member, manager, employee or agent of a limited liability company

also violate some personal duty owed by the individual to the injured party." *Utila Dive,* at *2-3; citing *Petch v. Humble*, 939 So.2d 499, 504 (La. Ct. App. 2006); *see also Curole v. Ochsner Clinic, LLC*, 811 So.2d 92, 97 (La. Ct. App. 2002) (emphasis added).

The Court further stated that "to hold an individual liable, 'some duty owed by the individual defendant to the plaintiff outside his capacity as a member must have been breached.'" *Id.* Therefore, the Court found that because the claimant sought to hold the individual owner liable for negligence / breach of a professional duty, but failed to establish a basis for holding him personally liable outside of the duty he owed to them as a member of the LLC, they had no breach of contract claim against the owner personally.

Similarly, in *HWB, Inc. v. Metalpro Indus.,L.L.C.*, No. 05-6665, 2006 WL 1581329 (E.D. La. June 7, 2006) the Court interpreted that for the "wrongful act" exception of § 12:1320(D) to eliminate the veil of protection afforded to the members of an LLC, the negligent or wrongful act must be done "outside of one's capacity as a member, manager, employee, or agent of the limited liability company." *HWB, Inc.,* 2006 WL 1581329 at *2; citing *Curole v. Ochsner Clinic, L.L.C.*, 811 So.2d 92, 97 (La. App. 4th Cir.2002)(finding plaintiff's allegations against an individual officer of an LLC insufficient to support a finding of liability since plaintiff did not set forth facts showing that the individual acted outside of his capacity as an officer of the LLC). Therefore, the Court found that "a member of an LLC may be liable for his individual negligent or wrongful conduct only if such conduct is done outside of his capacity as a member of the LLC." *Id.* at *3; citing *Curole*, 811 So.2d at 97.

Lastly, in *Ogea,* although the Court found that the fraud exception to 12:1320(D) was inapplicable because the claimant failed to establish that the Defendant's failure to provide proof of insurance to counsel until the day of trial resulted in an "unfair advantage" for defendant or loss / inconvenience to the claimant, the Court did not expressly state that a member must have committed an

9

act outside of the duty he owed, or his role as a member of the LLC to be liable based on the fraud exception. Rather, as in *HWB, Inc.,* and *Utila Dives,* the Court provided that for the negligent or wrongful act exception to apply to hold a member personally liable, they must have acted outside of their role / duty owed as a member of the LLC. Based on the foregoing, the Court finds that none of the above referenced cases support JNP's argument that for the fraud exception of §12:1320 to hold a member personally liable outside of the LLC, that member must have committed a negligent or wrongful act outside of his role as a member of the LLC. As a result, the Court finds that §12:1320 does not bar defendants' counterclaim. As such, **IT IS ORDERED** that defendants' motion to amend and add supplemental counterclaims against Johnson is hereby **GRANTED.**

### B. Amend Original Counter Claim

In addition to joining Johnson, the defendants also seek to amend their original counterclaim by adding claims that they allege were unknown or immature at the time they filed their original counterclaim. *See* R. Doc. 44-1, p. 4. Specifically, defendants argue that they seek to amend certain allegations that they made in their original counter-claim with specific amounts of damages that were not known at the time of filing its original counterclaim. *Id.*

In opposition, JNP contends that it does not oppose defendants request for leave to amend the original counterclaim to assert supplemental claims against JNP that arose after the filing of the original counterclaim. *Id.* at p. 5. However, JNP does state that it denies liability as to all of these claims, and avers that defendants have failed to state a viable supplemental claim against it through it proposed amended complaint, so as to avoid waiver of any Rule 12 defenses against Defendants claims. *Id.* at n. 1. Therefore, the Court finds that Defendants request to amend and assert additional claims is **GRANTED AS UNOPPOSED.**

### IV. Conclusion

Based on the foregoing, Defendants' **Motion for Leave to Join Additional Party, to Amend and to Supplement Original Counter-Claim (R. Doc. 44)** is **GRANTED** as to Johnson, and **GRANTED AS UNOPPOSED** as to the additional claims against JNP.

The Clerk is directed to file the proposed amended pleading into the record.

New Orleans, Louisiana, this 10th day of March 2014

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**